STATE of North Dakota, By Russell W. STUART, Commissioner of North Dakota State Game and Fish Department, Plaintiff and Appellant,

v.

DICKINSON CHEESE COMPANY, Inc., Defendant and Respondent.

John GURTNER, Individually, Defendant, Third-Party Plaintiff and Respondent,

v.

CITY OF DICKINSON, a Municipal Corporation, Third-Party Defendant and Respondent.

Civ. No. 8833.

Supreme Court of North Dakota.

July 27, 1972.

**60**

Helgi Johanneson, Atty. Gen., and Albert A. Wolf, Special Asst. Atty. Gen., Bismarck, for plaintiff and appellant; Leonell W. Fraase, Bismarck, of counsel.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and respondent Dickinson Cheese Company, Inc.

William R. Mills, Bismarck, for defendant, third-party plaintiff, and respondent John Gurtner.

Greenwood, Moench & Heth, Dickinson, for third-party defendant and respondent City of Dickinson.

STRUTZ, Chief Justice.

The State of North Dakota, by its State Game and Fish Commissioner, brought this action to recover damages for the value of fish killed as a result of pollution of the Heart River near Dickinson, in Stark County. The complaint alleges that the discharge of whey into the river by the defendant Dickinson Cheese Company caused the death of thousands of fish, totaling some 36,000 pounds, thereby damaging the environment in and around the river for a distance of some twelve miles and destroying the fish; that all fish located in any public waters in this State are the property of the State of North Dakota; and that the plaintiff is responsible for such fish for the benefit of the people of the State. The action was commenced against the defendant cheese company and John Gurtner, its manager, for monetary damages for destruction of the fish and damage to the environment and for exemplary damages.

The defendant Gurtner, as defendant and third-party plaintiff, served and filed a third-party complaint against the City of Dickinson.

The trial court dismissed the complaint of the plaintiff as well as the complaint of the third-party plaintiff, on the ground that the complaints failed to state claims

upon which relief could be granted, and the plaintiff takes this appeal. The sole question before us on this appeal is whether the State of North Dakota, as represented by the State Game and Fish Department, has such property rights in fish, while they are in the river in a free state, that the invasion of those property rights by the defendants will support an action for damages.

■ Fish swimming in streams of the State are *ferae naturae*. 35 Am.Jur.2d Fish and Game, Sec. 1, p. 645.

■ Ownership of and title to fish while they are in such state of freedom is in the State for the purpose of regulating the enjoyment, use, possession, disposition, and conservation thereof for the benefit of the people. Sec. 20–01–02, N.D.C.C.

■ The regulatory power of the State extends not only to the taking of its fish but also over the waters inhabited by the fish. 35 Am.Jur.2d Fish and Game, Sec. 43, p. 682.

It has been held that the power to protect fish and game is an inherent attribute of the State's sovereign power. State v. McCoy, 63 Wash.2d 421, 387 P.2d 942 (1963).

It has been held that although the law provides that the ownership of fish, while they are in a state of freedom, is in the State for the purposes of regulation of their taking and conservation, the interest of the State in fish running wild in the streams of the State is that of a sovereign, and not that of an owner. Commonwealth v. Agway, Inc., 210 Pa.Super. 150, 232 A. 2d 69 (1967).

■ As sovereign, the State has the power to determine when and under what conditions fish running wild may be taken and thus reduced to ownership, but it does not have such property interest in the fish while they are in a wild state sufficient to support a civil action for damages for the destruction of those fish which have not been reduced to possession. Commonwealth v. Agway, Inc., *supra*.

■ Did the law enacted by the Legislative Assembly in 1967, Chapter 479, now Chapter 61–28 of the North Dakota Century Code, commonly referred to as the "Antipollution Act," bestow upon the State of North Dakota the power to maintain an action for monetary damages for the unlawful killing of fish in the wild state? We think not. That chapter was enacted to give to the State the power to control, prevent, and abate the pollution of surface waters in the State. It gives to the State of North Dakota, through its Water Pollution Control Board, acting jointly with the State Health Council, the authority to adopt, amend, or repeal rules, regulations, and standards of quality of the waters of the State, and it fixes penalties for the violation thereof. It does not give to the State ownership sufficient to support a civil action for damages against one who unlawfully pollutes a stream and thus causes the destruction of fish while they are running wild in such water.

For reasons stated in this opinion, the order dismissing the complaint of the plaintiff and the complaint of the third-party plaintiff is in all things affirmed.

PAULSON, ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.